**United States District Court**
**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| **United States of America,**<br>    **Petitioner,**<br><br>v.<br><br>**3M Company,**<br>    **Respondent.** | **No. SA-20-MC-01192** |

### Motion to Quash Subpoena to LTC Theresa Schulz

The United States of America files this action and moves to quash the subpoena Respondent 3M Company served on LTC Theresa Schulz ("LTC Schulz"), an employee of the Department of Defense ("DOD"). The Second Amended Subpoena to Testify at Deposition ("Second Amended Subpoena" or "the subpoena") is attached as Exhibit 1.

### I.   Background

Respondent 3M is a defendant in multi-district litigation ("MDL") occurring in the Northern District of Florida related to the safety of 3M products. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885-MCR-GRJ (N.D. Fla.). The United States is not a party to that litigation.

In connection with the MDL and an earlier request for documents and testimony from LTC Schulz, 3M issued an Amended Subpoena on August 27, 2020 seeking testimony from LTC Schulz for deposition on September 17, 2020. Ex. 2. After learning of LTC Schulz's move from California to Texas, 3M issued a Second Amended Subpoena for testimony on September 25, 2020. Ex. 1. 3M unilaterally scheduled LTC Schulz's deposition for 9 a.m. on October 9, 2020. Ex. 1.

In its Subpoena, 3M asserts that LTC Schulz's relevance is solely connected to "(i) the military's desire for non-linear hearing protection device; (ii) the military's participation in the design and development of non-linear hearing protection devices, including the Combat Arms

Earplugs; (iii) the analysis or testing of non-linear earplugs containing the ISL filter, including the Combat Arms Earplugs; and (iv) the location of any documents or data regarding those topics.". Ex. 1 at 8.

## II. Regulatory Scheme

The DOD established policies and procedures for release of DOD information and testimony of DOD personnel as witnesses in litigation. 32 C.F.R. § 97.1 *et seq*. Specifically, 32 C.F.R. § 97.1 states, "[t]his directive establishes policy, assigns responsibilities, and prescribes procedures for the release of official DoD information in litigation and for testimony by DoD personnel as witnesses during litigation." Under this directive, the DOD limits the disclosure of DOD information and testimony of DOD personnel related to information obtained during the individuals' performance of official duties. 32 C.F.R. § 97.6.

DOD personnel are not allowed to testify in litigation without prior written approval. *Id.* The DOD has set forth factors for the DOD to consider in determining whether to allow DOD personnel to testify. 32 C.F.R. § 97.6(b). Specifically, "[t]he regulations direct officials to consider the following "types of factors" in granting or denying a *Touhy* request: (1) whether the request is unduly burdensome or inappropriate under the applicable court rules; (2) whether disclosure is appropriate under the rules of procedure governing the case in which the request arose; (3) whether the disclosure would violate a statute, executive order, regulation, or directive; (4) whether the disclosure is appropriate or necessary under the relevant substantive law concerning privilege; (5) whether the disclosure would reveal classified information; and (6) whether disclosure would compromise ongoing enforcement proceedings or constitutional rights, reveal the identity of an intelligence source, disclose trade secrets, or otherwise be inappropriate." *Agility Pub.*

*Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.,* 246 F. Supp. 3d 34, 42 (D.D.C. Mar. 30, 2017) (citing 32 C.F.R. § 97.6(b)).

Under these regulations, the DOD may produce agency records or provide testimony in such proceedings only if the DOD determines that the disclosure is appropriate based on the factors, requirements, and procedures set forth in the regulations. These regulations help the United States (1) avoid spending the time and money to benefit private parties, (2) conserve the time of DOD personnel for conducting their official duties, and (3) minimize the DOD's possible involvement in issues unrelated to its mission.

## III. Argument

### A.  The Subpoena Should be Quashed under Touhy

As noted above, the testimony of DOD employees and production of government records is governed by 32 C.F.R. § 97.1 *et seq*. The United States Supreme Court has upheld these types of regulations. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (finding federal officials could lawfully refuse to respond to subpoenas not in compliance with a valid federal regulation). Moreover, the Fifth Circuit has upheld similar regulations. *See CF Indus., Inc. v. Dept. of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 692 F. App'x 177, 181 (5th Cir. 2017) (per curiam) ("Federal agencies are permitted to promulgate regulations, known as *Touhy* regulations, governing the disclosure of information pursuant to a request"); *United States v. Wallace*, 32 F.3d 921, 929 (5th 1994) ("The Department of Justice regulations have been held to be valid and mandatory").

Currently, the primary statutory source for such regulations is 5 U.S.C. § 301, the federal government's so-call "housekeeping" statute, which authorizes the head of every Executive Branch agency to "prescribe regulations" for governing the department, the conduct of its

employees, the distribution and performance of its business, and "the custody, use, and preservation of the records, papers, and property appertaining to it." *See, e.g., Touhy*, 340 U.S. at 468 (relying on predecessor to current 5 U.S.C. §301); *see also id.* at 463 n.2. Such regulations also serve to centralize department or agency determinations as to whether subpoenas will be willingly obeyed or challenged. *Id.* at 468. These regulations thereby avoid "the possibilities of harm from unrestricted disclosure in court." *Id.*

Because courts universally recognize the validity of regulations like the one in this case, courts have repeatedly held that the regulations impose a binding legal duty on federal employees that the courts cannot force the employees to disobey. In the words of the Fourth Circuit, "an unbroken line of authority directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations." *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) (finding the district court lacked jurisdiction to compel the appearance and testimony of a federal employee in an action to which the government was not a party).

The leading case in this area of the law is the Supreme Court's decision in *Touhy*. In *Touhy*, an employee of the Department of Justice was subpoenaed to provide departmental records to a prisoner in a federal habeas corpus proceeding. 340 U.S. at 464. Acting pursuant to a regulation like the one involved in this case, the Attorney General withheld permission for the employee to comply with the subpoena. *Id.* at 464–65. The district court that issued the subpoena held the employee in contempt for complying with the Attorney General's directive. *Id.* at 465. On appeal, the Supreme Court held that the agency regulation was valid, under the predecessor to present 5 U.S.C. § 301, and that because the regulation was valid, the employee could not be compelled to

obey the district court's subpoena. *Id.* at 467–69. The Court noted that it had reached the same result a half century earlier in *Boske v. Comigore*, 177 U.S. 459 (1900).

Compliance with *Touhy* regulations is mandatory. *United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994). "[A]n agency's choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007). The court can only set aside an agency's decision not to produce documents or allow testimony if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *CF Indus.*, 692 F. App'x at 181. "The scope of review under this standard is narrow, and a court is not to substitute its judgment for that of the agency." *Id.* (quoting *Hasie v. Office of the Comptroller of the Currency*, 633 F.3d 361, 365 (5th Cir. 2011)).

Here, on August 12, 2020, the DOD responded to 3M's *Touhy* request to depose LTC Schulz and determined her appearance was not authorized after thorough consideration. Specifically, the DOD determined: (1) the requested discovery was rendered irrelevant in light of the MDL Court's decision that 3M could not avail itself of the government contractor defense; (2) that LTC Schulz lacked or had limited relevant knowledge of the information listed in 3M's request; (3) that the requested deposition would not be productive and would create an undue burden on the DOD; and (4) the testimony sought was cumulative of other witness testimony.[1] Ex. 3.

Unsatisfied with DOD's *Touhy* response, 3M issued subpoenas to elicit LTC Schulz's deposition testimony. Exs. 1, 2. In response to the instant subpoena, the DOD has further explained its objection to LTC Schulz's deposition based on each of the four independently sufficient reasons

---

[1] LTC Schulz is referenced within the response as Dr. Theresa Schulz.

included within its *Touhy* response. DOD's articulated objections are attached hereto as Exhibit 4 and incorporated herein.

3M's subpoena critically "fails to take into account the [agency's] 'legitimate concern with the potential cumulative effect of granting such requests.'" *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 459 (E.D.N.Y. 2011) (quashing subpoenas for testimony of VA employees). "[A]n agency's choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *Puerto Rico*, 490 F.3d at 61. Once an agency determines not to provide testimony "in the context of private litigation, when the government is not a party, a court should not order testimony to be given … without the showing of a compelling interest." *Alex v Jasper Wymann & Son*, 115 F.R.D. 156, 157 (D. Me. 1986).

DOD's decision to deny 3M's request to depose LTC Schulz was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *CF Indus.*, 692 F. App'x at 181. As a result, 3M's Second Amended Subpoena must be quashed in light of the DOD's authority to exercise discretion with regard to denying 3M the opportunity to depose LTC Schulz.

**B.  The Court should Quash the Subpoena under Rule 45**

Federal Rule of Civil Procedure 45 sets forth numerous protections for third parties faced with subpoenas from litigation of which they are not a party. A court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). The Fifth Circuit has set forth six factors to consider when evaluating whether a subpoena presents an undue burden:

> (1) relevance of the information requested;
> (2) the need of the party for the documents;

(3) the breadth of the document request;
(4) the time period covered by the request;
(5) the particularity with which the party describes the requested documents; and
(6) the burden imposed.

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). The court should also "consider the expense and inconvenience to the non-party." *Id.*

Here, in response to 3M's *Touhy* request and as discussed above, the DOD set forth four reasons to deny 3M's request to depose LTC Schulz, demonstrating that DOD's determination was not arbitrary or capricious. Each reason is addressed in turn.

### 1. The request is unduly burdensome and not proportional to the needs of the case

While parties to a lawsuit "must accept its travails as a natural concomitant of modern civil litigation, [n]on-parties have a different set of expectations … concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). Once an agency determines not to provide testimony "in the context of private litigation when the government is not a party, a court should not order testimony to be given . . . without the showing of a compelling interest." *Alex*, 115 F.R.D. at 157.

Here, through its *Touhy* request, 3M sought to depose LTC Schulz for the purpose of eliciting testimony that would support a government contractor defense.[2] Ex. 4 at 2. However, on July 24, 2020, the MDL Court determined that 3M could not avail itself of the government contractor defense, which nullifies 3M's request. *Id*. Since the Court's ruling, 3M has failed to provide any explanation for why LTC Schulz's testimony would be needed at this stage of the litigation. *Id*. Accordingly, the Court should quash the subpoena because it is unduly burdensome and not proportional to the needs of the case.

---

[2] The DOD "previously denied [3M's] request for the same testimony that [3M] now seeks, making it cumulative and duplicative of the December 2, 2019 *Touhy* request." Ex. 4 at 2.

### 2.   The request is cumulative and duplicative

The Court should quash the subpoena because the request is cumulative and duplicative. Communications with LTC Schulz demonstrated that she lacked relevant knowledge of the information requested or that the limited information she could provide is cumulative of information provided by various other witnesses, who were previously deposed. *Id*. at 3. Specifically, LTC Schulz's testimony would be cumulative and duplicative of testimony previously provided by LTC John Merkley and Dr. Richard Price. LTC Merkley and Dr. Price were deposed regarding the military's desire for a non-linear hearing protection device, the military's participation in the design and development of non-linear hearing protection devices, including the Combat Arms Earplug, analyses or testing of non-linear earplugs containing the ISL filter, including the Combat Arms Earplug, and the location of any documents or data regarding those topics. These topics are the exact same topics for which LTC Schulz's testimony is currently sought. *Id*. Simply stated, there is no need for a third deposition on the same subjects.

### 3.   The request fails to allow reasonable time

The Court should quash the subpoena because it fails to allow DOD a reasonable time to comply. The subpoena was served on September 28, 2020, eleven days prior to the deposition date. *Id*. 3M scheduled LTC Schulz's deposition without any consultation and less than fourteen days from the date of service.

"Although the applicable discovery rules do not specify what constitutes reasonable time to comply, common sense dictates that reasonableness is determined in relation to the extent of the materials requested and other underlying circumstances in the case." *Minor Doe 1 through Parent 1 Doe v. School Board for Santa Rosa County*, 2009 WL 10674249, at *2 (N.D. Fla. Nov. 23, 2009). "Court's often assume that a minimum of fourteen days is required, because the deadline for objecting to subpoenas is fourteen days after service." *Jones v. Singing River Health System*, No. 1:14CV447-LG-RHW, 2016 WL 2851332, at *2 (S.D. Miss. May 13, 2016) (citing *Verisign, Inc. V. XYZ.com, LLC*, No. 15-mc-175-RGA-MPT, 2015 WL 7960976, at *3 (D. Del. Dec. 4, 2015); *Hall v. Louisiana*, No. 12-657-BAJ, 2014 WL 1652791 (M.D. La. Apr. 23, 2014); Fed. R.

Civ. P. 45(d)(2)(B)). Accordingly, less than two weeks' notice is insufficient and does not provide LTC Schulz and the DOD sufficient time to prepare for the deposition and provide cover for LTC Schulz's missed work. *Cf. Parra v. State Farm Lloyds*, No. 7:14-CV-691, 2015 U.S. Dist. LEXIS 185386, at *3–4 (S.D. Tex. Jan. 13, 2015) (quashing a subpoena requiring production in 22 days, because "thirty days is a 'reasonable time' to respond to a subpoena duces tecum, and defendant should have been given at least thirty days.").

### 4.  Consideration of the subpoena's cumulative impact

Lastly, the DOD has considered the cumulative impact of subpoenas such as the one at issue in light of the litigation involving 180,000 plaintiffs. The cumulative impacts of numerous requests, such as the subpoena at issue, would be especially disruptive to the agency's functioning. Ex. 4 at 4. The Court must consider the cumulative impact on the DOD given that the 3M MDL involves more than 180,000 plaintiffs who likely all had interactions with other DOD employees during their military service. "[A]ny given request may seem small in isolation, but an agency has an interest in protecting itself against the cumulative disruption to its duties that would come with routinely granting requests for testimony." *Westchester Gen. Hosp., Inc. v. HHS, Ctr. for Medicare & Medicaid Servs.*, 770 F. Supp. 2d 1286, 1298 (S.D. Fla. 2011) (citing *Moore v. Amour Pharm. Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991)).

## IV. Conclusion

For the foregoing reasons, the Court should grant this instant motion and quash the subpoena.

Respectfully submitted,

John F. Bash
United States Attorney

By:    */s/ Kristin Bloodworth*
        Kristin Bloodworth
        Assistant United States Attorney
        Texas Bar No. 24095848
        Matthew Mueller
        Texas Bar No. 24095592
        601 N.W. Loop 410, Suite 600
        San Antonio, Texas  78216
        (210) 384-7315 (phone)
        (210) 384-7358 (fax)
        kristin.bloodworth@usdoj.gov
        matthew.mueller@usdoj.gov

**Certificate of Service**

I certify that on October 7, 2020, I electronically filed this document with the Clerk of Court using the CM/ECF system.

*/s/ Kristin K. Bloodworth*
Kristin K. Bloodworth
Assistant United States Attorney